Argued and submitted August 4, affirmed October 13, 2004

In the Matter of the Compensation of
Donald P. Holman, Claimant.

FREIGHTLINER LLC,
*Petitioner,*

*v.*

Donald P. HOLMAN,
*Respondent.*

01-08613; A122945

98 P3d 1165

Deborah L. Sather argued the cause for petitioner. With her on the briefs were Brian M. Perko, and Sather Byerly & Holloway.

George J. Wall argued the cause for respondent. With him on the brief was Welch, Bruun & Green.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

Freightliner (employer) seeks review of an order of the Workers' Compensation Board (board) holding that claimant timely filed his claim. We affirm.

The relevant facts are few and undisputed. During his 29 years working for employer, claimant was regularly exposed to loud noise. Long before he stopped working for employer in 1994, he learned that he was suffering from work-related hearing loss, although no physician ever confirmed that fact nor was the condition ever disabling. Six years after leaving employer, on June 13, 2001, he filed a claim for workers' compensation benefits for the hearing loss. Three weeks later, on July 5, claimant visited a physician concerning the hearing loss. In a July 12 letter, a physician verified what claimant already knew, that is, that he had work-related hearing loss. Employer denied his claim as untimely. An administrative law judge set aside the denial and the board affirmed.

These facts require us to interpret ORS 656.807(1), which provides:

"All occupational disease claims shall be void unless a claim is filed with the insurer or self-insured employer by whichever is the later of the following dates:

"(a) One year from the date the worker first discovered, or in the exercise of reasonable care should have discovered, the occupational disease; or

"(b) One year from the date the claimant becomes disabled or is informed by a physician that the claimant is suffering from an occupational disease."

In *Bohemia, Inc. v. McKillop*, 112 Or App 261, 828 P2d 1041 (1992), we rejected an argument that, under the statute, the earlier of the two dates in subparagraph (a) should be compared with the earlier of the two dates in subparagraph (b) to determine which of those earlier dates was later, and that the later of those dates started the one-year limitation period. We held instead that the legislature "more likely" intended to start the limitation period at the last of the four dates described in subparagraphs (a) and (b)—that is, the date the

claimant discovered the occupational disease, the date he should have discovered it, the date he was disabled, or the date he was informed by a physician that he was suffering from the disease. *Id.* at 265. We reached that conclusion despite the fact that it rendered subparagraph (a) internally redundant because "[o]bviously, the date that a worker should have discovered an occupational disease can never be *after* the date that the worker actually discovered the disease." *Id.* at 264 n 2 (emphasis in original).

In *Bohemia, Inc.*, however, all four of the relevant events in ORS 656.807(1) had passed. We had no occasion to decide the issue raised in this case, that is, whether the start of the one-year limitation period is suspended until the last of the events occurs. If it is so suspended, then claimant's filing was timely; the limitation period had not even started to run when he filed his claim because, at that time, he had never been informed by a physician that he was suffering from an occupational disease. He was likely informed on July 5, 2001, when he visited a physician concerning the hearing loss. His limitation period, therefore, would have ended on July 5, 2002, and he filed his claim well before that date. That is the conclusion that the board reached. Employer disagrees, contending that, under ORS 656.807(1), the timeliness of a claim is determined by reference to events that have already occurred at the time a worker files it. If that is the case, claimant did not file in time, because, on the date that he filed, neither of the events in subsection (b) had occurred, and well more than one year had elapsed since the later of the events in subsection (a), his discovery of his occupational disease.

We agree with the board. In doing so, we recognize that any attempt to discern legislative intent must necessarily grasp at minimal cues where, as here, the statute we are trying to interpret appears to be the result of imperfect drafting. As we noted in *Bohemia, Inc.*, an early draft of the statute prepared by the House Task Force on Occupational Disease did not contain the phrase "whichever is the later of the following dates"; the early draft read, "whichever is earlier." *Id.* at 264. That version of the statute *was* internally coherent, because a claimant could always determine the

earliest of the enumerated events that he or she had experienced, and that event would trigger the limitation period. In addition, "whichever is earlier" gave effect to the term "should have known" in subparagraph (a).

However, the drafters rejected "whichever is earlier" for the current language, and when they did, they failed to conform the rest of the statute to the new phrase—for example, by stating "claims are not void until one year *after* the latest of the following events has occurred" or, contrariwise, "claims are void one year after the worker discovers the occupational disease, is informed by a doctor of the occupational disease, or becomes disabled, *whichever is latest at the time of filing*." As a result, in addition to the incoherence apparent in subparagraph (a), the limitation period is unclear for claimants who have not yet experienced all of the four enumerated events.

We are not, however, without textual clues. Although the verbs in subparagraph (a), "discovered" and "should have discovered," are in the past tense, the verbs in subparagraph (b) are in the present: "*becomes* disabled" and "*is* informed." If we can presume that the difference was intentional, the inference supports claimant's theory. Had the legislature chosen to trigger the limitation period on the date the worker "became" disabled or "was" informed, only past events would count, so in choosing different language, the intention must have been to indicate that future ones could count as well. *See Martin v. City of Albany*, 320 Or 175, 181, 880 P2d 926 (1994) ("The use of a particular verb tense in a statute can be a significant indicator of the legislature's intention.").

To the same effect, the word "date" means "the point of time at which a transaction or event takes place or is appointed to take place." *Webster's Third New Int'l Dictionary* 576 (unabridged ed 1993). Thus, the "date" in the statutory phrase "the later of the following dates" connotes both a historical date that marks the time when an event has already occurred (*e.g.*, the date when a claimant has experienced one or more of the four enumerated events) and a future date designating an undetermined point in time on

which an event will or might occur (*e.g.*, the date when one of the enumerated events might later occur, if at all).

Both of these indications reinforce what claimant asserts is the plain meaning of the statute: the claim must be filed by one year from the latest of four specified events. Nothing in the language of the statute indicates that the specified event must already have transpired at the time of claim filing.

The legislative history also supports claimant's position. In *Bohemia, Inc.*, we concluded, after examining the relevant material, that the legislature's intent "was to extend the Statute of Limitations in recognition of the latency periods associated with some occupational diseases." 112 Or at 264. If employer is correct in its interpretation of ORS 656.807(1), then a claimant who learns that he or she has contracted an occupational disease that is not, at the time, disabling, must either file within a year of acquiring the knowledge or wait until he or she is disabled. That interpretation draws us uncomfortably close to the result that the legislature rejected when, in its attempt to extend the limitation period, it rejected the term "earlier" and replaced it with "later."

Employer supports its reading of the statute with only two arguments, neither of which is persuasive. First, it argues that the board's interpretation of the statute renders subparagraph (a) a nullity, and a statute should be construed to give effect to all of its parts. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 648, 20 P3d 180 (2001). But that maxim can have little force when applied to a statute like ORS 656.807(1) for which any interpretation will result in at least one null element, the "or should have known" phrase in subparagraph (a). Employer's second argument is that claimant's interpretation "defeats the policy for a statute of limitations to require a party to bring a claim while relatively fresh, when necessary evidence and key witnesses are most available. * * * A 20-year delay in filing, as in the instant case, clearly prejudices a proper defense, a result that the statute of limitations is designed to avoid." The problem with this argument is that employer cites no authority to support its assertion that this statute of

limitations derives from the same policy as other ones—a critical shortcoming in light of our conclusion in *Bohemia, Inc.*, that an entirely different and contrary policy drove the legislature in amending ORS 656.807(1).

In short, employer argues that ORS 656.807(1) as interpreted by the board creates a potentially limitless statute of limitations and that no rational legislature could have intended such an absurd result. That argument, however, must give way to the statute's textual indicators and its legislative history.

Affirmed.